<u>NOT FOR PUBLICATION</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
October 31, 2007

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GIT-N-GO, INC., | ) | Case No. 04-10509-R |
| | ) | Chapter 11 |
| Debtor. | ) | |

| | | |
|---|---|---|
| MARLA C. REYNOLDS, TRUSTEE | ) | |
| OF THE GIT-N-GO, INC. | ) | |
| CREDITORS' LIQUIDATION | ) | |
| TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-1040-R |
| | ) | |
| QUALITY TIMBER PRODUCTS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Before the Court is the Plaintiff's Motion for Summary Judgment and Brief in Support (Adv. Doc. 18) (the "Motion") filed by Plaintiff Marla C. Reynolds, Trustee of the Git-N-Go, Inc. Creditors' Liquidation Trust ("Reynolds") on August 23, 2007.  The Defendant, Quality Timber Products ("QTP"), has not responded to the Motion.

**I.      Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(F); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. Even though QTP has not responded to the Motion, Reynolds will be entitled to summary judgment only if she has met her initial burden of presenting, by affidavit or other admissible evidence, facts that would establish all the elements of her *prima facie* case, as well as facts that negate any pleaded affirmative defenses.[1] See Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) ("[A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. . . . By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."). Further, the factual record presented by Reynolds must be interpreted in a light most favorable to the non-moving party, QTP. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998).

---

[1] If the party moving for summary judgment would have the ultimate burden of persuasion at trial, that party must submit undisputed evidence that would be sufficient to support a directed verdict at trial. See Anderson v. Dep't of Health & Human Servs., 907 F.2d 936, 947 (10th Cir. 1990), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

### III.  Contentions of the Parties

In her Complaint to Avoid Preferential Transfers, to Recover Amount of Such Transfers and Objection to Proof of Claim (Adv. Doc. 1) (the "Complaint"), Reynolds, as liquidating trustee of the Git-N-Go, Inc. Creditors' Liquidation Trust, asserts that Git-N-Go, Inc. ("GNG") made certain transfers to QTP within the ninety day period preceding GNG's bankruptcy petition, are preferential transfers that are avoidable pursuant to 11 U.S.C. § 547(b) and recoverable by Reynolds under 11 U.S.C. § 550.[2] Reynolds also objects to QTP's unsecured proof of claim in the amount of $6,491.60 pursuant to 11 U.S.C. § 502(a) and (d), and requests that the claim be disallowed until QTP has turned over to Reynolds the amount of the alleged preferential transfers.

In the Answer of Defendant, Quality Timber Products to the Adversary Complaint of the Plaintiff, Reynolds (Adv. Doc. 11) ("Answer"), QTP denies that the transfers were preferential, reasserts its unsecured proof of claim in the amount of $6,491.60, and asserts as affirmative defenses that (1) "QTP advanced new value to the debtor as contemplated by 11 U.S.C. § 547(c)(4) in the amount of the creditor's claim.  Such new value should be repaid by the Debtor or should offset the amount of any recovery awarded by the Court" (the "Subsequent New Value Defense"); (2) Reynolds fails to state a claim upon which relief may

---

[2]Because GNG's bankruptcy case was filed on January 30, 2004, prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (Apr. 20, 2005), all references are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA (generally effective October 17, 2005).  With certain exceptions not relevant here, the BAPCPA amendments "shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act."  BAPCPA, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (2005).

3

be granted (the "Rule 12(b)(6) Defense"); and (3) Reynolds' claim "is barred because all payments made by QTP to the Debtor [sic]³ were substantially contemporaneous exchanges and not avoidable preferences," ostensibly pursuant to 11 U.S.C. § 547(c)(1) (the "Contemporaneous Exchange Defense").  Answer at 3.

## IV.    Record on Summary Judgment

The following material facts are supported by the pleadings or by the Declaration of Marla C. Reynolds, Trustee of the Git-N-Go, Inc. Creditors' Liquidation Trust (the "Reynolds Declaration" or "Decl."), which is attached to the Motion as Exhibit 1, and have not been disputed by QTP:

On January 30, 2004 (the "Petition Date"), GNG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Complaint, ¶ 1; Answer, ¶ 1; Decl., ¶ 2.  On August 11, 2005, GNG and the Official Committee of Unsecured Creditors filed the Second Amended Joint Plan of Liquidation of GNG, which was subsequently modified on October 27, 2005, and November 8, 2005 (as modified, the "Plan").  Complaint, ¶ 2; Answer, ¶ 2; Decl., ¶ 3.  On November 9, 2005, the Court entered an Order Confirming the Plan (the "Confirmation Order").   Complaint, ¶ 4; Answer, ¶ 4; Decl., ¶ 4.

The Plan provided for the creation of the Git-N-Go, Inc. Creditors' Liquidation Trust (the "Trust") and provided that Reynolds would be appointed the liquidating trustee of the Trust.  Complaint, ¶ 3; Answer, ¶ 3; Decl., ¶ 5.  Reynolds is a certified public accountant practicing in Dallas, Texas.  Decl., ¶ 1; not controverted.  On November 14, 2005, the Trust

---

³QTP did not make payments to the Debtor; rather, payments were made by the Debtor to QTP.

was in fact established when Reynolds and Ronald Welsh, the person responsible for discharging the duties of GNG, executed the Trust Agreement. Complaint, ¶ 5; Answer, ¶ 5; Decl., ¶ 6. Pursuant to the Plan, the Confirmation Order and the Trust Agreement, the Trust acquired the sole and exclusive authority to enforce any claims, rights or causes of action that GNG, as Debtor or Debtor in Possession, or GNG's Chapter 11 estate holds against any person or entity, including, without limitation, claims, rights or causes of action under 11 U.S.C. §§ 541, 544, 545, 547, 548, 549, 550, 551 and 553 ("Avoidance Claims"). Complaint, ¶ 6; Answer, ¶ 6; Decl., ¶ 7. Pursuant to the Plan, the Confirmation Order and the Trust Agreement, as the liquidating trustee of the Trust, Reynolds is authorized to prosecute all Avoidance Claims.[4] Complaint, ¶ 7; Answer, ¶ 7; Decl., ¶ 8.

On or about November 15, 2005, the effective date of the Plan (the "Effective Date"), QTP and Reynolds executed a Statute of Limitations Tolling Agreement ("Tolling Agreement"), in which they agreed to toll the statute of limitations for the Avoidance Claims from the Effective Date to and including January 30, 2008. Complaint, ¶ 8; Answer, ¶ 8; Decl., ¶ 10. Pursuant to the Tolling Agreement, QTP agreed that if Reynolds instituted any action or suit against QTP alleging Avoidance Claims on or before January 30, 2008, QTP would not assert a defense of the statute of limitations. Complaint, ¶ 9; Answer, ¶ 9; Decl., ¶ 11. On April 5, 2007, as liquidating trustee of the Trust, Reynolds commenced this

---

[4]The facts concerning the GNG's bankruptcy, the confirmation of the Plan, the establishment of and provisions of the Trust, and the appointment of Reynolds as liquidating trustee are also supported by the record in the GNG bankruptcy case.

5

Adversary Proceeding to avoid and recover the transfers from QTP pursuant to 11 U.S.C. § 547(b) and 550.  Complaint;  Decl., ¶ 9.[5]

QTP sold merchandise to GNG on open account and issued invoices to GNG.  Decl., ¶ 12; uncontroverted.  Between December 10, 2003, and January 30, 2004, transfers were made from GNG's checking account to or for the benefit of QTP in the total amount of $47,327.25 as payments on GNG's open account. Decl., ¶ 12; uncontroverted. Specifically, the following transfers were made to QTP:[6]

> Check No. 79137 in the amount of $8,449.05 dated November 21, 2003, and paid on December 10, 2003;
>
> Check No. 79273 in the amount of $33,105.00 dated November 27, 2003, and paid on December 12, 2003;
>
> Check No. 79396 in the amount of $2,283.00 dated December 4, 2003, and paid on December 12, 2003;
>
> Check No. 79562 in the amount of $464.60 dated December 10, 2003, and paid on December 18, 2003; and

---

[5]In its Answer, QTP did not assert a statute of limitations defense.

[6]Attached to and incorporated into the Complaint, but not referenced in the Motion, is a Payment Summary prepared or adopted by Reynolds, which itemizes checks written by GNG to QTP during the preference period, and which indicates the date of each check alleged to be a preferential transfer, the check number, the amount of the check, and the date the check was cleared (*i.e.*, was honored by the financial institution and paid) ("Payment Summary").  Complaint, Exh. A.  In her Motion, Reynolds appropriately states that the Transfers occurred on the date the check was honored (see Barnhill v. Johnson, 503 U.S. 393 (1992)).  However, the date that each check was written by GNG or delivered to QTP may be relevant to QTP's Contemporaneous Exchange Defense because the date of delivery of a check may indicate whether the parties intended the payment to be a substantially contemporaneous exchange for merchandise delivered.  Thus, for the purpose of analyzing whether Reynolds' Motion successfully negates QTP's affirmative defenses, the Court will consider the Payment Summary as undisputed by Reynolds.

6

>Check No. 80252 in the amount of $2,925.60 dated January 1, 2004, and paid on January 13, 2004 (collectively, the "Transfers").

Complaint, Exh. A; Decl., ¶ 12; uncontroverted. Each Transfer was made in payment of certain invoices previously issued by QTP to GNG for merchandise purchased by GNG on open account. Decl., ¶ 12; uncontroverted.

GNG's books and records reflect that in December 2003, GNG had total assets of $25,010,220.87 and total liabilities of $28,094,729.45. Decl., ¶ 13; uncontroverted.

Unsecured creditors holding allowed claims against GNG's bankruptcy estate will receive, upon liquidation and distribution of the estate, less than one hundred percent (100%) of their allowed claims. Decl., ¶ 14; uncontroverted.

Between December 10, 2003 (the date of the first Transfer made during the preference period), and the Petition Date (January 30, 2004), QTP provided GNG with new value in the form of merchandise valued at $9,417.20, and QTP did not receive a security interest or payment from GNG for such new value. Decl., ¶ 15 and Decl. Exh. A; uncontroverted. Included in the $9,417.20 new value is the value of the merchandise for which QTP filed its proof of claim in the amount of $6,491.60. Decl. Exh. A; uncontroverted.

**V.   Conclusions of Law**

    A.    <u>Avoidance under Section 547(b)</u>

Section 547(b) of the Bankruptcy Code provides in pertinent part–

>Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
>>(1) to or for the benefit of a creditor;

>(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>(3) made while the debtor was insolvent;
>
>(4) made–
>
>>(A) on or within 90 days before the date of the filing of the petition;
>
>>\* \* \*
>
>(5) that enables such a creditor to receive more than such creditor would receive if–
>
>>(A) the case were a case under chapter 7 of this title;
>
>>(B) the transfer had not been made; and
>
>>(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of a trustee's avoidance power is to insure that all unsecured creditors receive equal distribution from available assets. Gill v. Winn (In re Perma Pac. Props.), 983 F.2d 964, 968 (10th Cir. 1992) (citation omitted). Reynolds has the burden of proving that the Transfers are avoidable under Section 547(b). See 11 U.S.C. § 547(g).

The Court concludes that Reynolds has established all the elements of Section 547(b) with undisputed facts. The Transfers to QTP were made by checks drawn from GNG's checking account, and therefore were transfers of property in which GNG had an interest. The Transfers were made to QTP to pay invoices for previously delivered merchandise, and therefore the Transfers were on account of an antecedent debt owed by GNG before the

8

Transfers were made. The Transfers were made within the ninety day period preceding GNG's bankruptcy. Because a debtor is presumed to be insolvent during the ninety days prior to bankruptcy (see 11 U.S.C. § 547(f)), and QTP has not presented any evidence to rebut the presumption of insolvency, the Transfers were made while GNG was insolvent.

QTP's debt was not secured by property of GNG, and therefore, had the Transfers not been made to QTP, QTP would have been entitled to assert an unsecured nonpriority claim against GNG's estate in the amount of the Transfers. Under the Plan, after liquidation, prepetition nonpriority unsecured creditors of GNG's estate will receive less than one hundred percent of their claims. Therefore, QTP's receipt of the Transfers enabled it to receive more than it would have if it asserted a prepetition unsecured nonpriority claim against the GNG estate for the amount of the Transfers in a Chapter 7 case.

Accordingly, the Transfers were preferential transfers of property of the GNG estate, and except to the extent precluded by an affirmative defense, the Transfers are avoidable pursuant to Section 547(b). QTP was the initial transferee of the Transfers and the entity for whose benefit the Transfers were made. Therefore, to the extent that Reynolds otherwise prevails in avoiding the Transfers, she will be entitled to recover such avoided Transfers, or their value, from QTP for the benefit of the GNG's estate (and the beneficiaries of the Trust) pursuant to Section 550(a) of the Bankruptcy Code.

B.  QTP's Affirmative Defenses

In order to obtain summary judgment on her Section 547(b) claim, Reynolds must also show with undisputed facts that QTP will be unable to prove its affirmative defenses. Reynolds has already established that she has stated a Section 547(b) claim for which relief

9

may be granted. Thus, Reynolds is entitled to summary judgment on QTP's Rule 12(b)(6) Defense.

With respect to the Contemporaneous Exchange Defense, QTP contended in its Answer that the Transfers are not avoidable because the Transfers were substantially contemporaneous exchanges for new value. Section 547(c)(1) provides that a transfer may not be avoided as a preference to the extent that the transfer was–

> (A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1). New value is defined as –

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

11 U.S.C. § 547(a)(2).

Under Section 547(c)(1) and (g), QTP must establish, for each Transfer, that: (1) it advanced new value to GNG in exchange for the Transfer (and the extent of the new value advanced); (2) the Transfer was "substantially contemporaneous" with the tender of new value to GNG; and (3) GNG and QTP specifically intended for the Transfer to constitute an exchange for the new value. See Davis v. I.P.H.F.H.A., Inc. (In re Amarillo Mesquite Grill, Inc.), 355 B.R. 826 (Bankr. D. Kan. 2006); Gonzales v. DPI Food Products Co. (In re Furrs Supermarkets, Inc.), 296 B.R. 33, 39 (Bankr. D. N.M. 2003). Reynolds will be entitled to summary judgment on the Contemporaneous Exchange Defense if she establishes that there

10

are no disputed material facts and that the undisputed facts negate one of the elements of the defense.

The purpose of the substantially contemporaneous defense of Section 547(c)(1) is to insulate from avoidance a payment that the parties intended to be a contemporaneous exchange for new value given to a debtor, but the exchange was not in fact simultaneous, but was within such a reasonably short time period that the exchange may be considered "substantially" contemporaneous. See HLI Creditor Trust v. Hyundai Motor Co. (In re Hayes Lemmerz Int'l, Inc.), 329 B.R. 136, 140 (Bankr. D. Del. 2005). "The critical inquiry is whether the parties intended the transaction to be substantially contemporaneous." Id. See also APS Holding Corp. v. ABX Enterpr., Inc. (In re APS Holding Corp.), 282 B.R. 795, 800 (Bankr. D. Del. 2002). In a sales transaction, the terms of the contract between the parties often holds clues as to whether the parties intended the buyer to be obligated to pay as goods are delivered (or within a certain short period of time), or whether they intended that the seller would extend credit to the buyer. See, e.g., Brown v. Kitchenmaster (In re Hertzler Halstead Hospital), 334 B.R. 276, 289 (Bankr. D. Kan. 2005) (the fact that short term loans were documented by notes clearly indicated that the parties did not intend a contemporaneous exchange of value). Further, from the terms of the parties' agreement, it can be determined whether the transfer was within the time parameters the parties intended would constitute a substantially contemporaneous exchange, or whether the payment breached the payment terms and therefore was made on account of something more than a "technical" antecedent debt.

"Courts use two approaches to determine whether a transaction is, in fact, substantially contemporaneous. Some courts follow a strict 10 day rule, adopted from section 547(e)(2). . . . The majority of courts, however, follow a less rigid approach by examining the totality of circumstances in the case." Hayes Lemmerz, 329 B.R. at 140 (citations omitted). See also Amarillo Mesquite Grill, 355 B.R. at 836 ("Congress did not set a specific time limit in § 547(c)(1) for determining whether an exchange is 'substantially contemporaneous,' but rather provided a flexible standard based on the circumstances."). "Relevant circumstances include: (1) the length of delay, (2) the reason for the delay, (3) the nature of the transaction, (4) the intentions of the parties, and (5) the possible risk of fraud." Hayes Lemmerz, 329 B.R. at 140, *citing* Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 969 F.2d 321, 328 (7th Cir. 1992).

The issues of intent and substantial contemporaneousness are both fact intensive, and summary judgment on this defense would be appropriate only if a single inference, one in favor of Reynolds, could be drawn from the facts. For example, if the Transfers were made months after payment was contractually due, an inference in favor of Reynolds might be drawn. See Furrs Supermarkets, 296 B.R. at 46 (payments made weeks or months after delivery of merchandise were not substantially contemporaneous exchanges of value). However, if the Transfers were made in payment of current invoices that were not "past due," depending on other factors, the Court could draw the inference that the Transfers were substantially contemporaneous exchanges for merchandise. See, e.g., Amarillo Mesquite Grill, 355 B.R. at 837 ("Had Amarillo paid insurance premiums for insurance coverage

12

during the same month as the coverage was provided, it may have qualified as a substantially contemporaneous exchange.").

The Court concludes, however, that the record on summary judgment is insufficient to determine whether any of the Transfers were or were not "substantially contemporaneous" with the delivery of merchandise to GNG, or whether QTP or GNG intended the Transfers to be contemporaneous exchanges for new value. Specifically, the record does not include (1) evidence of the terms of any agreement between QTP and GNG regarding GNG's payment obligations for delivered merchandise, (2) evidence establishing when merchandise was delivered by QTP, (3) evidence of the date of the invoices that the Transfers purported to pay, (4) evidence of the amount of time that elapsed between each delivery of merchandise and the Transfer that was intended to pay for such merchandise; or (5) evidence of the intent of representatives of QTP or GNG concerning payment terms. The Court notes that Reynolds has no personal knowledge of GNG's intent, as she was not employed by GNG at the time of the Transfers, and was not appointed as liquidating trustee until after the Plan was confirmed. Reynolds has not presented any third party affidavits or documents from which the Court may discern the intent of the parties at the time of the Transfers.[7] Moreover, it is not possible for the Court to determine when GNG became legally obligated to pay for merchandise and whether there was a delay in payment, and if there was, the length of delay

---

[7]Reynolds states merely that "each Transfer was in payment of certain invoices previously issued by [QTP] to [GNG] for merchandise purchased by [GNG] on open account." Decl., ¶ 12. This general statement is not sufficient to negate QTP's Contemporaneous Exchange Defense.

13

and the reason for the delay. Thus, numerous issues of fact preclude summary judgment in favor of Reynolds.

Reynolds contends that "[n]one of the Transfers were made contemporaneously with the date that the debts were incurred. In every instance, the invoice date and shipping date predated the date of [GNG's] payment to [QTP] and were substantially before each check actually cleared for payment." Motion at 9. She also argues that "based upon the parties' conduct of selling merchandise to [GNG] on open account to be paid under the terms of the invoice, it is apparent that the parties never intended that the exchange of value would be contemporaneous." Id.

As stated above, the record provided by Reynolds does not reflect the parties' agreement or intent, the invoice dates, the shipping dates, or the dates GNG actually received the merchandise, and therefore the Court cannot definitively determine that the Transfers were not within the contemplation of the parties standard of "substantially contemporaneous" payment, or that they were not made within the terms of an invoice, or within a reasonable time of receipt of the goods.

Moreover, the time period between the date of shipment/delivery/receipt (if such information was available) and the date that GNG's checks to QTP *cleared* is not a relevant consideration in determining whether value was substantially contemporaneously exchanged. While the date a check is cleared (honored) is the date of the "transfer" for the purposes of determining whether a transfer is within the ninety day preference period (see Barnhill v. Johnson, 503 U.S. 393 (1992)), the date a check is delivered to the creditor, rather than when it is honored, is the relevant metric in assessing substantial contemporaneousness. See

14

Johnson v. Barnhill (In re Antweil), 931 F.2d 689, 692-93 (10th Cir. 1991), *aff'd* 503 U.S. 393 (1992); Brown v. Kitchenmaster (In re Hertzler Halstead Hospital), 334 B.R. 276, 288 (Bankr. D. Kan. 2005).  In fact, the period of time between the date a check is delivered to the payee and the date the check is honored by the financial institution sometimes accounts for the lapse that causes a transfer by check to technically constitute payment of an antecedent debt for the purposes of Section 547(b).[8]  However, in enacting Section 547(c), Congress stated that while a check is normally considered a credit transaction, "for the purposes of [section 547(c)(1)], a transfer involving a check is considered to be 'intended to be contemporaneous,' and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, that will amount to a transfer that is 'in fact substantially contemporaneous.'"  Hayes Lemmerz, 329 B.R. at 140, *quoting* S. Rep. No. 95-989, at 88 (1978); H.R. Rep. No. 95-595, at 373 (1977).

Moreover, the sole fact that QTP sold GNG merchandise "on open account" does not disprove that the parties intended that payments be considered contemporaneous exchanges of value.  Without evidence of the terms of the open account and the invoices, or, importantly, evidence of intent and performance, issues of fact preclude judgment as a matter of law in Reynolds' favor on the Contemporaneous Exchange Defense.

With respect to QTP's Subsequent New Value Defense, Reynolds concedes that merchandise valued at $9,417.20 which was delivered after the Transfers were made and for

---

[8]For instance, in this case, the record reflects a minimum of eight days and maximum of nineteen days passed between the date the checks were written and the "clear date."  It is not at all clear that the checks were not delivered to QTP at or near the time merchandise was received by GNG.

which QTP received no payment or security, constitutes subsequent new value given to GNG, and that the new value should be set off or credited against the amount of any otherwise avoidable Transfers. Section 547(c)(4) provides that a trustee may not avoid a transfer –

> to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
>
> > (A) not secured by an otherwise unavoidable security interest; and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4).[9] Because Reynolds agrees that Section 547(c)(4) will apply in this proceeding to reduce the amount of avoidable transfers, she is not entitled to summary judgment in her favor on the Subsequent New Value Defense.

## VI.  Conclusion

The Court concludes that Reynolds has established with undisputed facts all the elements of Section 547(b) and has negated QTP's Rule 12(b)(6) Defense, and therefore is entitled to judgment on those issues. Reynolds has not established with undisputed facts that the Transfers were not intended to be, and were not in fact, substantially contemporaneous exchanges for new value, and therefore Reynolds is not entitled to summary judgment on

---

[9]"The exception of [§] 547(c)(4) is intended to encourage creditors to work with troubled companies and to remove the unfairness of allowing the trustee to void all transfers made by the debtor to a creditor during the preference period without giving any corresponding credit for subsequent advances of new value to the debtor for which the preference defendant was not paid." Furrs Supermarkets, 296 B.R. at 45, *quoting* 5 COLLIER ON BANKRUPTCY ¶ 547.04[4][a], at 547-68.3.

QTP's Contemporaneous Exchange Defense. Reynolds admits that QTP is entitled to some reduction in the amount of Transfers subject to avoidance on account of deliveries of merchandise made to GNG subsequent to the Transfers for which QTP received neither payment nor security, and therefore Reynolds is not entitled to summary judgment on QTP's Subsequent New Value Defense. Finally, Reynolds has established that QTP was the initial transferee of the Transfers, and to the extent she is entitled to avoid any Transfers pursuant to Section 547(b), and subject to any setoff or credit for subsequent new value under Section 547(c)(4), Reynolds will be entitled to recover the Transfers, or their value, from QTP pursuant to Section 550(a).

Accordingly, the Motion is granted in part and denied in part.

**SO ORDERED** this 31st day of October, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT